UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KELLY ANNE ZONCA,

    Plaintiff,

v.                                        CASE NO. 8:10-cv-2330-T-23MAP

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), Plaintiff seeks review of the Commissioner's decision denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). She alleges the ALJ erred by 1) failing to properly consider her medication side effects; 2) failing to support his findings with substantial evidence; and 3) failing to properly consider opinion evidence. After consideration, I recommend that the Plaintiff's complaint be dismissed, and the Commissioner's decision be affirmed.

    *A. Background*

Plaintiff, born May 11, 1985, enrolled in special education classes due to dyslexia and ADD, earned a high school diploma, and completed technical training classes in photography. She has past work as a cashier, but despite having many jobs during her short adult lifetime, she has not been able to maintain employment. She reports that she is terminated due to her inability to get along with others, and difficulty concentrating. She alleges disability beginning May 31, 2006, as a result of borderline personality disorder, post traumatic stress disorder, and bipolar

disorder. She reports enduring sexual abuse from age 7- 20, and more recently, suffering from emotional abuse by a fiance′.

Plaintiff's claims were denied initially and upon reconsideration. Thereafter, Plaintiff requested a hearing before an ALJ, and on September 3, 2009, the ALJ opined she was not disabled. Plaintiff filed a request for review, but the Appeals Council denied review. Thereafter, the Plaintiff exhausted her administrative remedies, and filed this action.[1]

*B. Standard of Review*

To be entitled to DIB or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is

---

[2] The district judge referred this matter to me for a report and recommendation. *See* 28 U.S.C. § 636.

currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits her ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform her past relevant work; and (5) if the claimant cannot perform the tasks required of her prior work, the ALJ must decide if the claimant can do other work in the national economy in view of her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert,* 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

*C. Discussion*

   *1. medication side effects*

Plaintiff claims the ALJ discussed only three of her medication side effects, and erred by failing to make any findings on the effect of her medications on her ability to work. Plaintiff further asserts that the Appeals Council erred by denying review, despite the fact that Plaintiff had submitted new evidence in the form of pharmacy information sheets about the side effects of Hydroxyzine, Fluoxetine, and Depakote. She claims that she experiences *all* of the possible side effects described by the pharmacy information sheets. Citing to the Disability Report Appeal Form SSA 3441 dated July 7, 2007, Plaintiff indicates she experiences side effects from Depakote, including changes in mood or behavior, changes in menstrual period, mental changes; from Seroquel, light headedness, weakness, fast heartbeat, worsening mood changes, depression, trouble concentrating, trouble sitting still, and from Wellbutrin, nausea, headaches, anxiety, fast heartbeat, agitation, difficulty sleeping, feelings of irritability or hostility, impulsive behavior, severe restlessness, and worsening feelings of depression (R. 178). Dr. Alcober, Plaintiff's treating doctor at Seminole Community Mental Health Center, noted that she reported headaches, sleeping problems, and severe mood swings (R. 285), and side effects of dizzy spells, possible delayed menstrual cycle, elevated pulse, and rashes lasting three weeks (R. 279, 283, 287).

At the ALJ hearing, however, when asked whether she has any side effects from her medications, the Plaintiff testified that mainly her medications make her sleep (she takes them at bedtime and sleeps around eleven hours each night), sometimes cause cotton mouth or antisocial behavior. Additionally, she reported that she experiences grogginess or drowsiness for a couple of hours each morning. When asked whether she experiences any side effects later in the day,

4

like drowsiness, dizziness, or anything like that, she testified "not that I can think of." Moreover, despite her testimony that she believes her medications cause antisocial behavior, she claims to spend time emailing with friends and socializing about once a month with friends (R. 35-36).

The medical evidence shows that on many dates Plaintiff reported no side effects from her medications. *See* R. 286 (October 25, 2006, no side effects from Wellbutrin), 354 (February 23, 2009, Geodon and Vistaril), 356 (December 22, 2008, Geodon), 357 (October 27, 2008, Geodon), 358 (September 29, 2008, Seroquil), 362 (April 10, 2007, Seroquil, Wellbutrin), 379 (April 20, 2009), and 380 (March 23, 2009, Geodon and Vistaril). These medical records showing no side effects conflicts with the pharmacy information sheets submitted by Plaintiff's counsel (with certain possible side effects circled). See R. 216-26). Similarly, as to Plaintiff's allegation that the Appeals Council erred by failing to accept review and failing to consider the pharmacy information sheets, the Commissioner notes that these sheets were actually submitted to the ALJ. Moreover, the Eleventh Circuit recently held that the Appeals Council was free to give little weight to same type of conclusory evidence (certain possible side effects circled on forms) in another case where counsel for the claimant submitted same information sheets. *See Burgin v. Commissioner of Social Security,* 420 Fed. Appx 901, 2011 WL 1170733, *2 (11th Cir. March 30, 2011). Accordingly, after consideration, I find that the ALJ properly considered the medical evidence, including evidence of Plaintiff's medication side effects, and that the Appeals Council did not err in denying review.

   2. *ALJ hypothetical*

Plaintiff next argues that the ALJ's ultimate finding at step five that she was not disabled was not supported by substantial evidence. Specifically, she states that the ALJ's decision was

5

based upon an incomplete hypothetical question posed to the vocational expert that did not include all of her impairments. She asserts that the hypothetical should have included the Dr. Alcober's opinions that she is unable to work weekly, unable to perform classroom activities or volunteer work, and requires monthly therapy (R. 330); Joan Gruber's opinions that she had marked limitations in her ability to perform activities within a schedule, maintain regular attendance and be punctual, or complete a normal workday or workweek (R. 382-383); and a state agency consultant's opinions that she had moderate limitations in the ability to perform within a schedule, maintain regular attendance, be punctual, complete a normal workday/ workweek (R. 343, 347-8). She states that her work history supports these limitations, stating she has been fired from many jobs that last from only three days to four months (R. 159-328), and that she was not a lead worker in five jobs (R. 160-165). She also claims that the hypothetical should have referred to her GAF scores which have ranged from 50 (on four dates between September 2006-April 2007)-65 (more recently, in 2008 and 2009). A GAF score of 41-50 indicates serious impairments in social, occupational, or school functioning (e.g. no friends, unable to keep a job); a GAF pf 51-60 mean moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers); and a GAF of 61-70 indicates that either some mild depressive symptoms are present or that difficulty in social or occupational functioning exists. *American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders* at 32 (4th ed. 1999). Finally, the Plaintiff maintains that the hypothetical should have included her limitations in her ability to concentrate. The ALJ found that she had moderate difficulties in maintaining concentration, persistence, or pace (R. 13). The Plaintiff

6

reports she can only concentrate for five-ten minutes, Joann Gruber, ARNP indicated she had marked limitations in her ability to maintain concentration, persistence, or pace (R. 382-83), and a state agency consultant opined that she had moderate limitations in her ability to maintain concentration, persistence, or pace (R. 343, 347-48).

> At the hearing, the ALJ posed the following hypothetical question to the VE: I'd like you to consider an individual the claimant's younger age and we'll consider a limited education and possibly the past work you described. Such an individual would be limited to one to three step non-complex tasks with periods of concentration limited to two hours. The individual would not be able to have contact with the public and would additionally be limited to only occasional direct interaction with coworkers but could work in their vicinity if there were no large groups of over five ... Would there be other jobs that exists in the national economy or regional economy that such an individual would be able to perform?

(R. 46).

The ALJ must pose an accurate hypothetical that takes into account all the claimant's impairments. *See Pendley v. Heckler,* 767 F.2d 1561 (11th Cir. 1985). The ALJ's hypothetical posed to a vocational expert must comprehensively describe the plaintiff's limitations. *See Id.* at 1563. Of course, the ALJ is not required to include limitations found not credible, and submits to the expert only those supported by objective evidence of record. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996), *McSwain v. Bowen*, 814 F.2d 617, 620 n.1 (11th Cir. 1987). Here, the ALJ properly assessed the Plaintiff's RFC and offered a detailed hypothetical to the VE. As the Commissioner set forth, the hypothetical need not have included the limitations imposed by Dr. Alcober and Joan Gruber, nor her alleged medication side effects (discussed already in part 1 above) as these decisions were unsupported by the medical evidence as a whole, and the ALJ properly rejected these limitations in her written decision. *See* R. 14-17. As to Plaintiff's assertion that her GAF scores show that the hypothetical was deficient, I find that she has failed

to show how her GAF scores correlate to specific work limitations, and the burden of proving disability rests with the Plaintiff. According to the DSM-IV-TR's explanation of GAF scores, a GAF score merely reflects the examiner's opinion regarding the individual's symptoms or possible difficulty in social, occupational, or school functioning. *See American Psychiatric Assoc. Diagnostic and Statistical Manual of Mental Disorders,* 32-34 (Text revision, 4th ed. 2000). And, several courts within this district have noted that GAF scores do not denote functional mental limitations. *See Osterhoudt v. Astrue*, 2011 WL 127129, *4-5 (M.D. Fla. January 14, 2011) (Wilson) (GAF scores do not constitute functional limitations); *Stottler v. Astrue,* 2010 WL 3833679, *7 (M.D. Fla. September 28, 2010) (McCoun) ("the Commissioner declines to endorse GAF scores for use in the disability program as such scores lack a direct correlation to the severity requirements in the mental disorders listings. A GAF score has little or no bearing on a Plaintiff's work-related functioning, and Plaintiff has failed to demonstrate otherwise"); *Stokes v. Astrue,* 2009 WL 2216785, * (M.D. Fla. July 23, 2009) (Merryday) (stating that "a GAF score does not itself necessarily reveal a particular type of limitation and is not an assessment of a claimant's ability to work ... [t]hus, an opinion concerning GAF, even if required to be accepted as valid, would not translate into a specific finding in regard to functional limitations"). Hence, the ALJ did not err in failing to correlate the Plaintiff's GAF scores to functional limitations, and I find that she properly assessed the Plaintiff's RFC and offered a detailed hypothetical to the VE.

With regard to the Plaintiff's contention that the ALJ failed to properly consider her inability to concentrate, and to include same in the hypothetical to the VE, I find that the ALJ in fact properly accounted for such limitations. Plaintiff suffered from moderate limitations in her

concentration, persistence, and pace, but Maryann Wharry, Psy.D., and Lee Reback, Psy.D., both state agency consultants, opined that she had sufficient concentration, persistence, and pace to perform simple tasks (R. 304, 316, 342, 349). Consistent with these opinions is another evaluation by Steven Abraham, Psy.D. stating that Plaintiff's "attention and concentration are fair and her judgment is intact" and concluding that she be evaluated for vocational rehabilitation (R. 328-331). *See Gantea v. Commissioner of Social Security,* 380 Fed. Appx. 950 (11th Cir. 2010) (affirming district court's decision that ALJ's hypothetical which failed to reference claimant's moderate difficulty with concentration, persistence, and pace was not incomplete because several doctors had opined that those impairments were not severe enough to constitute a functional limitation). Accordingly, I find that the ALJ utilized the VE's testimony and the framework of the Medical-Vocational Guidelines to conclude that the Plaintiff could perform a significant number of jobs in the national economy given her age, education, work experience, and RFC. I find substantial support for the ALJ's decision.

### 3. Opinion evidence

Plaintiff argues that the ALJ erred by failing to properly consider the opinion of Dr. Alcober, her treating physician at Seminole Community Mental Health Center. Dr. Alcober completed a form checking a box that Plaintiff is "unable to work," that her condition is "permanent," and that she requires "monthly" therapy (R. 290). Plaintiff maintains that Dr. Alcober's opinions should be given controlling weight. Dr. Alcober treated Plaintiff from February 20, 2006 through January 5, 2007, for depression, bipolar disorder, and borderline personality.

The law of this circuit requires that the testimony of a treating physician be given

substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The Commissioner's regulations dictate a similar preference:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

20 C.F.R. § 404.1527(d)(2). When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion, i.e., "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist; if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors. 20 C.F.R. § 404.1527(d)(2).

An ALJ may reject the opinion of any physician when the evidence, as a whole, supports a contrary conclusion. *Bloodsworth*, 703 F.2d at 1240 (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981)). Moreover, a treating source's opinion that a claimant is unable to work is not a "medical opinion" as defined by the regulations, but it is an opinion on an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(e). Where the record contains such an opinion, the ALJ must evaluate all the evidence to determine the extent that it is supported by the record, but an opinion that a claimant is unable to work is never entitled to controlling weight or

10

special significance. S.S.R. 96-5p, 1996 WL 374183, *1-3 (S.S.A.). The Court recognizes the ultimate issue of whether Plaintiff is able to work is one reserved for the Commissioner and one as to which the opinion of a treating physician is not entitled to special significance, 20 C.F.R. § 404.1527(e)(1), (3); however, the ALJ's decision still must address the treating physician's opinion. *See* SSR 96-5p, 1996 WL 374183, at *1 (July 2, 1996) ("[O]pinions from any medical source about issues reserved to the Commissioner must never be ignored, and…notice of the determination or decision must explain the consideration given to the treating source's opinion(s)).

Here, the ALJ concluded that Dr. Alcober's statements that the Plaintiff is unable to work was inconsistent with the medical evidence. Regarding Dr. Alcober's statements (at exhibits 5F and 18F), the ALJ opined that "after reviewing the record in its entirety, the undersigned concludes, however, that neither [of the medical source statements provided by her psychiatrist at Exhibits 5F and 18F] or the claimant's allegations at the hearing regarding the degree of limitation associated with the claimant's mental impairments is supported by the overall medical evidence of record" (R. 15). The ALJ presented a detailed summary of all of the medical evidence showing substantial evidence supporting his decision to discredit Dr. Alcober's opinions. See R. 15-16. She also noted that the Plaintiff participates in a wide range of daily activities including preparing simple meals, helping with household chores, emailing friends, playing video games, socializing with friends, and dating (R. 16-17). Hence, I find the ALJ's decision is supported by substantial evidence, as she adequately explained her decision not to assign controlling weight to the opinions of Dr. Alcober and her decision to assign greater weight to the opinions of the reviewing medical experts from the State agency as more consistent with

the medical record when viewed in its entirety (R. 17).

For the foregoing reasons, it is hereby

RECOMMENDED:

1. The Plaintiff's complaint be dismissed, and the Commissioner's decision be affirmed.

IT IS SO REPORTED at Tampa, Florida on January 13, 2012.


_____
MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Honorable Steven D. Merryday